UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SOVEREIGN BANK, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 11-11054-DJC |
| CAMILLA J. WARRENDER, | ) ) ) | |
| Defendant. | ) ) | |

**STATEMENT OF REASONS**

**CASPER, J.**                                                                                                              April 17, 2012

**I.    Introduction**

Plaintiff Sovereign Bank ("the Bank") moves to reopen this matter after this Court entered an order of dismissal on October 17, 2011 upon notice that the parties had settled their dispute. The Court did so, without prejudice to any party, upon good cause shown, to reopen the action within thirty days if the settlement was not consummated. D. 15. The Bank's motion, filed on November 14, 2011, to reopen this matter is based upon its contention that the parties were unable to reach an enforceable agreement on material terms. D. 16-17. Plaintiff Camilla Warrender ("Warrender") disagrees, arguing that the parties reached an agreement on material terms and has now cross-moved to enforce an October 14, 2011 email from her counsel to the Bank's counsel that she contends constitutes an enforceable agreement between the parties. D. 24. For the reasons set forth below, the Court finds that the parties failed to reach an enforceable settlement agreement and thus ALLOWS the Bank's motion to reopen this case.

1

**II.     Discussion**

For an agreement to be enforceable, "the parties must have had the intention to be bound by their agreement at the moment of its formation." Basis Tech. Corp. v. Amazon.com, Inc., 71 Mass. App. Ct. 29, 39 (2008) (citing cases). Warrender contends that the parties intended to be bound by the terms set forth in an email sent from her counsel to the Bank's counsel on October 14, 2011 at 11:48 a.m. In that email, Warrender's counsel states: "I'm happy to report that we've reached agreement. Below are the terms we have agreed upon. We will draft mutually agreeable settlement agreement and releases." Ex. A to the Affidavit of Richard E. Gentilli ("Gentilli Aff.") in Support of the Bank's Motion to Reopen Case, D. 19. The e-mail lists the following terms: (1) amount of cash payment at closing; (2) the closing date; (3) mutual confidentiality and nondisparagement including that the bank will make no disclosures not required by law; (4) "Credit reporting - The Bank will report in accordance with FACTA"; (5) the Bank may use any real estate broker on Nantucket to market the property with two exceptions; and (6) "Full plenary release of the Bank and a limited release of Ms. Warrender . . . ." Id. Warrender's counsel sent an e-mail to the Bank's counsel no more than ten minutes earlier that included substantially similar language to that contained in the 11:48 a.m. email and added the following statement: "[W]hat do you propose we do while we finalize an agreement?" Ex. A to the Affidavit of Debra Squires-Lee ("Squires-Lee Aff."), D. 24-2. Shortly thereafter, the parties notified the Court of their settlement and, on October 17, 2011, the Court ordered dismissal "without prejudice to the right of any party, upon good cause shown, to reopen the action within 30 (thirty) days if settlement is not consummated." D. 15.

Counsel for the Bank subsequently drafted a series of documents related to the deed in lieu transaction and the parties' settlement. On October 20, 2011 at 2:59 p.m., the Bank's counsel e-

mailed the draft documents to Warrender's counsel, stating: "Since I am still waiting for my client's comments (and especially those of in-house counsel) I must reserve my right to make changes or additions to these, but I thought I would get the process moving by sending you these.  Also unless and until the documentation is finalized and signed by all parties, the Bank reserves all of its rights and remedies and waives none of the existing defaults."  Ex. B to the Gentilli Aff., D. 22.  Warrender's counsel did not respond to this e-mail and, indeed, at no point after the Bank's counsel's October 20, 2011 email - even during the parties' exchange of draft agreements - did Warrender's counsel object to changes or additions to the terms set forth in the October 14, 2011 e-mail.

On November 2, 2011, after the Bank's counsel had sent a series of e-mails requesting a response to the October 20, 2011 drafts, Warrender's counsel e-mailed redlined versions of the draft documents. Ex. C to Gentilli Aff., D. 20.  The revisions contained significant changes to at least two material terms contained in the October 14, 2011 e-mail.  The first revision changed the October 14, 2011 e-mail's term of a "full plenary release of the Bank and a limited release of Ms. Warrender" to a limited release of the Bank.  Ex. C to Gentilli Aff. at 6 (Draft Deed-in-Lieu Agreement attached to November 2, 2011 e-mail), D. 20.  Unlike the provision in the October 14, 2011 e-mail regarding credit reporting (i.e., that "[t]he Bank will report in accordance with FACTA"), Wallender redlined the reporting and non-disparagement section so that what remained was that neither party would disclose such information to any third party "except as required by law in response to any regulatory, criminal or civil legal process" and  "[t]he Lender agrees that it shall not make any additional disclosures pursuant to the Fair and Accurate Credit Transaction Act ["FACTA"] or any other applicable consumer protection reporting acts."  Ex. C to Gentilli Aff. at 7, D. 20.   This

change in language was significant since the parties continued to disagree about what the Bank was legally obligated to disclose under FACTA.

Warrender could not have considered herself bound by the terms set forth in the October 14, 2011 email she now claims constituted the parties' final agreement in light of her November 2, 2011 revisions concerning the Bank's release and credit reporting. The parties do not dispute that the issues as to the Bank's release and credit reporting were two material terms. Moreover, the scope of the revisions show that the October 14, 2011 e-mail did not constitute an enforceable agreement on these material terms. For an agreement to be enforceable the parties must agree "on the essential terms of the transaction in order [for] the nature and extent of the parties' obligations [to] be determined and, hence, enforced." Novel Iron Works, Inc. v. Wexler Const. Co., Inc., 26 Mass. App. Ct. 401, 408 (1988). The parties did not reach agreement on the FACTA reporting obligations since the parties did not agree about what disclosures the Bank would be required to make about Warrender's mortgage under FACTA. This issue was not resolved by October 14, 2011 e-mail; clearly Warrender did not think it was resolved by that e-mail given the scope of redlining of the related provision in the draft of the Agreement proposed by the Bank. It is also unclear how the term concerning the Bank's reporting obligations under FACTA in the October 14, 2011 e-mail could be enforced in light of counsel's divergent interpretations as to the meaning of that term, namely, whether FACTA requires the Bank to report the resolution of the matter concerning Warrender's mortgage. The disagreement between the parties as to the Bank's obligations under FACTA demonstrates that the parties did not intend to be bound by this particular term in the October 14, 2011 e-mail.

The Court's conclusion that the parties did not intend to be bound by the terms set forth in

4

the October 14, 2011 email is further supported by counsel's statements in that email that the parties would draft a finalized, mutually acceptable agreement. In her email, counsel for Warrender stated that the parties "will draft mutually agreeable settlement agreement and releases" and asked the Bank's counsel, "what do you propose we do while we finalize an agreement?" Ex. A to Squires-Lee Aff., D. 24-2. In Massachusetts, "when parties have agreed to execute a final written agreement, there is a strong inference that the transaction is still open and that the parties are not bound until such a written agreement is produced." Aegis v. Finnegan, 2002 WL 225924, at *2 (D. Mass. Feb. 12, 2002) (internal quotation marks and citation omitted). Although Warrender argues that execution of a "finalized agreement" was a mere ministerial task to memorialize the parties' already binding settlement agreement, that is only the case when the parties have agreed upon all material terms which, as discussed above, is not the case here. See Goren v. Royal Invs. Inc., 25 Mass. App. Ct. 137, 140 (1987) (noting that "[i]f . . . the parties have agreed upon all material terms, it may be inferred that the purpose of a final document which the parties agree to execute is to serve as a polished memorandum of an already binding contract").

Because it cannot be said that the parties intended to be bound to the terms of the October 14, 2011 email or agreed to the material terms set forth therein, the Court finds that the parties did not reach a binding settlement agreement. This finding, coupled with the fact that the case was in its infancy at the time it was closed, constitutes good cause for reopening the case.

### III.    Conclusion

For the foregoing reasons, the Bank's motion to reopen this case is ALLOWED.

**So ordered.**

/s/ Denise J. Casper
United   States   District   Judge

the October 14, 2011 email is further supported by counsel's statements in that email that the parties would draft a finalized, mutually acceptable agreement. In her email, counsel for Warrender stated that the parties "will draft mutually agreeable settlement agreement and releases" and asked the Bank's counsel, "what do you propose we do while we finalize an agreement?" Ex. A to Squires-Lee Aff., D. 24-2. In Massachusetts, "when parties have agreed to execute a final written agreement, there is a strong inference that the transaction is still open and that the parties are not bound until such a written agreement is produced." Aegis v. Finnegan, 2002 WL 225924, at *2 (D. Mass. Feb. 12, 2002) (internal quotation marks and citation omitted). Although Warrender argues that execution of a "finalized agreement" was a mere ministerial task to memorialize the parties' already binding settlement agreement, that is only the case when the parties have agreed upon all material terms which, as discussed above, is not the case here. See Goren v. Royal Invs. Inc., 25 Mass. App. Ct. 137, 140 (1987) (noting that "[i]f . . . the parties have agreed upon all material terms, it may be inferred that the purpose of a final document which the parties agree to execute is to serve as a polished memorandum of an already binding contract").

Because it cannot be said that the parties intended to be bound to the terms of the October 14, 2011 email or agreed to the material terms set forth therein, the Court finds that the parties did not reach a binding settlement agreement. This finding, coupled with the fact that the case was in its infancy at the time it was closed, constitutes good cause for reopening the case.

### III.    Conclusion

For the foregoing reasons, the Bank's motion to reopen this case is ALLOWED.

**So ordered.**

/s/ Denise J. Casper
United   States   District   Judge