**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SOVEREIGN BANK, N.A., formerly known as Sovereign Bank,<br>*Plaintiff/Defendant-in-Counterclaim,*<br><br>v.<br><br>CAMILLA J. WARRENDER,<br>*Defendant/Plaintiff-in-Counterclaim.* | Civil Action No. 11-11054-DJC |

## MEMORANDUM OF LAW IN SUPPORT OF SOVEREIGN BANK, N.A.'S MOTION TO DISMISS COUNTERCLAIM

### I.   INTRODUCTION

The Plaintiff/Defendant-in-Counterclaim Sovereign Bank, N.A. (the "Bank") commenced this action against its borrower, the Defendant/Plaintiff-in-Counterclaim Camilla J. Warrender ("Warrender" or "Ms. Warrender"), on account of two promissory notes she had executed in favor of the Bank: a loan in the amount of $2,550,000 extended in January of 2007 and a home equity line of credit in the maximum amount of $180,000 extended in October of 2007.

In response to the Complaint, Ms. Warrender has filed an Answer and Counterclaim alleging violations of the Home Ownership and Equity Protection Act of 1994 and Regulation Z thereunder ("HOEPA"), the Equal Credit Opportunity Act and Regulation B thereunder ("ECOA") and the Truth in Lending Act ("TILA"), as well as claims for misrepresentation and violation of M.G.L. c. 93A. The Bank has now moved for dismissal of the Counterclaims against it because HOEPA is not applicable to the lending transactions at issue and the alleged violations of HOEPA, ECOA and TILA are all time-barred. Moreover, the Counterclaim fails to state valid claims for misrepresentation and for unfair and deceptive acts and practices in violation of M.G.L. c. 93A.

## II.   THE ALLEGATIONS OF THE COUNTERCLAIM

In her Answer, Ms. Warrender admits to the execution of the loan documents referenced in the Complaint. Answer, ¶¶ 5-10. In addition she asserts a Counterclaim making the following essential allegations.

### A.   The 2005 Construction Loan & 2006 Commercial Loan

Prior to 2007, Ms. Warrender owed a number of obligations to the Bank. In 2005, Ms. Warrender applied to the Bank for financing (the "2005 Construction Loan") in order to build a house on certain real estate conveyed to her as part of a divorce settlement (the "Property"). Counterclaim, ¶¶ 13-15. Ms. Warrender alleges that at the time of her loan application she had no income, that the Bank was aware of this and that the Bank intended to give her a loan that the Bank "knew she could not afford." Id., ¶¶ 16-17. In connection with the 2005 Construction Loan in the principal sum of $1.9 million and at the Bank's request, Ms. Warrender obtained two co-borrowers to co-sign the promissory note evidencing the loan indebtedness. Id., ¶¶ 18-21. Ms. Warrender alleges that the Bank failed to evaluate Ms. Warrender's ability to repay the 2005 Construction Loan (although the Bank did require co-borrowers). Id., ¶¶ 20-22.

Warrender stated that the final loan application that she signed contained outdated income information based on her individual tax returns for 2002-2003.[1] Id., ¶¶ 24-26. Although Ms. Warrender signed the loan application under oath, she claims that the income and expense information to which she attested was incorrect and fraudulently inserted by the Bank.[2] Id., ¶¶ 25-28. The 2005 Construction Loan closed on September 12, 2005 and was secured by a mortgage on the Property. Id., ¶¶ 30-31. Construction ensued and continued until the summer of

---

[1] These returns reflect income earned by Ms. Warrender from, *inter alia*, purchasing, rehabbing and selling real estate.
[2] The monthly income figure used was the average of Ms. Warrender's annual income as reflected in the 2002 and 2003 income tax returns divided by 12.

2

2006 when Ms. Warrender needed additional funding to complete construction and to make her loan payments, at which time she borrowed an additional $400,000 from the Bank through a commercial loan (the "2006 Commercial Loan"). Id., ¶ 33.

Ms. Warrender alleges that in 2006 she listed the Property for sale on the residential real property market. She alleges she received several offers, but that a Bank employee (who was also a social friend[3]) suggested in discussions that "she believed the offer was too low."[4] Id., ¶ 36. Ultimately the real estate agent representing Ms. Warrender was unable to complete negotiations for the sale of the Property. Id. ¶ 37.

### B.     The 2007 Loans at Issue

"In late 2006 Ms. Warrender approached Sovereign Bank about refinancing the 2005 Construction Loan." Id., ¶ 38. Ms. Warrender alleges she did not submit a new written application for this loan (Id., ¶ 39), but as is evident from Exhibit 1 and is admitted in the Counterclaim (Id., ¶ 50), Warrender submitted a loan application in connection with the loan.[5] The new loan (the "2007 Refinance Loan") consolidated and refinanced the 2005 Construction Loan and the 2006 Commercial Loan, provided Ms. Warrender with some additional funds and was granted without co-borrowers. The principal amount of the 2007 Refinance Loan was $2,550,000. Ms. Warrender alleges the loan application she signed was inaccurate as it was still based on her 2002-2003 tax returns and that the 2007 Refinance Loan related to her primary residence. Id., ¶¶ 42-46. At the closing of the 2007 Refinance Loan, Ms. Warrender signed a document indicating that the house being constructed on the Property was a "secondary home" and not her primary one. Id., ¶ 50; Exhibit 2. As was the case with the 2005 Construction Loan,

---

[3] See Counterclaim, at ¶ 63.
[4] Of note is the fact that Ms. Warrender has also (unsuccessfully) sued her real estate broker regarding the marketing of the Property, blaming the broker for the failure to sell the Property. See Warrender v. Young, C.A. No. 2009-00053 (Mass. Super. Ct. (Nantucket Div.)).
[5] The final, executed application dated January 5, 2007 (the closing date) is attached hereto as Exhibit 5.

Ms. Warrender claims that despite signing the application under oath, she was misled and defrauded by the incorrect income and expense information contained therein. Ms. Warrender claims she did not review the loan application before signing it. Id., ¶ 53.

On December 8, 2006 Ms. Warrender received a written commitment letter setting forth the approval of the 2007 Refinance Loan and the terms of repayment. That letter included the statement "rescission provisions do not apply." Apparently Ms. Warrender herself was concerned about the monthly payments and "immediately" following the January 5, 2007 loan closing she emailed the Bank about her concerns. Counterclaim, ¶ 56.

Later in October of 2007, Ms. Warrender borrowed an additional $180,000 from the Bank in connection with a home equity line of credit (the "2007 HELOC"). Id., ¶¶ 59-60.

### C.    The 2009 Modification of the 2007 Loans

In spite of her claims that the Bank was engaged in a plan to defraud her out of her equity in the Property, Ms. Warrender admits that in 2009 she asked for help from the Bank in repaying the 2007 Refinance Loan and 2007 HELOC and that the Bank agreed to: (1) reduce the interest rates on both loans from 6.25% to 3.5% and (2) permit her to make to interest-only monthly payments for a two-year period (the "2009 Modification"). Id., ¶¶ 63-66. Ms. Warrender executed an allonge to the promissory note evidencing the 2007 Refinance Loan indebtedness and a modification agreement regarding the 2007 HELOC indebtedness. Id., ¶¶ 7, 10.

Following the expiration of the two-year interest rate reduction, Ms. Warrender had still been unable to sell the Property and, as a result, again asked the Bank for further accommodations on the interest rates and the payments. The negotiations for further accommodations proved unsuccessful, and in March of 2011 Ms. Warrender "realized" that the "representation that Sovereign Bank would stick by her to a successful resolution through

modification and refinancing was false." Id., ¶¶ 67-72. Thereafter this civil action was commenced by the Bank on June 14, 2011. Id., ¶ 74. The Bank later commenced the foreclosure process. Id.

### III.  DISCUSSION

#### A.  Legal Standards Applicable to All Counts

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), all well-pleaded allegations of the pleading sought to be dismissed are normally taken to be true. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). A court is not required, however, to accept every allegation made by the complainant, no matter how conclusory or generalized. Id. See U.S. v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992) (Court need not give deference to "empirically unverifiable" conclusions, not "logically compelled, or at least supported, by the stated facts"); Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990) (Court is obliged neither to "credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation," nor to honor subjective characterizations, optimistic predictions, or problematic suppositions); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).

The United States Supreme Court recently explained the standard by stating that "[i]n practice, a complaint…must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1968 (2007) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984)). In Twombly, the Supreme Court stated that the often-quoted observation in Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" is

5

"best forgotten as an incomplete, negative gloss on an accepted pleading standard" and "has earned its retirement." Twombly, 127 S. Ct. at 1969 (citing Conley, 355 U.S. at 45-46).

If the allegations of the Counterclaim conflict with an attachment hereto (such as a contract) the attachment will control. Davidson v. Cao, 211 F. Supp. 2d 264, n. 33 (D. Mass. 2002) (citing Clorox Co. Puerto Rico v. Proctor & Gamble, 228 F. 3d 24, 32 (1st Cir. 2000)). Moreover, if a complaint refers to a document, a court may consider that document when it is appended to a motion to dismiss without converting it to a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d), 56(a), 56(c)(1); Hughes v. McMenamon, 204 F. Supp. 2d 178, 180 (D. Mass. 2002); Beddall v. State Street Bank & Trust Co., 137 F. 3d 12, 17 (1st Cir. 1998). Finally, if the allegations of the complaint regarding a document conflict with that document, the terms of the document will control. Davidson, 211 F. Supp. 2d at 264, n. 33 (citing Clorox Co. Puerto Rico, 228 F. 3d at 32).

### B.  The Loans Do Not Fall within the Statutes Relied upon by Ms. Warrender and the Claims Are Barred by the Applicable Statutes of Limitations.

#### 1.  The Claims under HOEPA and Regulation Z

In her Counterclaim Warrender asserts two causes of action under HOEPA. In Count I Ms. Warrender asserts that the Bank violated the requirements of HOEPA (15 U.S.C. § 1639), and Regulation Z (12 C.F.R. § 226.31, et seq.) promulgated thereunder, "by extending credit to Ms. Warrender based on the value of the Property, rather than her ability to repay the loans." Counterclaim, ¶¶ 81-82. See 15 U.S.C. § 1639(h); 12 C.F.R. § 226.34(a)(4). In Count II Ms. Warrender alleges that the Bank violated HOEPA and Regulation Z "by extending credit to Ms. Warrender without taking any action to verify her repayment ability." Counterclaim, ¶¶ 83-85. See 15 U.S.C. § 1639(h); 12 C.F.R. § 226.34(a)(4)(ii).

Assuming for purposes of this Motion to Dismiss that this was the case, which the Bank denies, Ms. Warrender's claims are time-barred. HOEPA claims for monetary damages must be asserted within one year and claims for rescission must be asserted within three years. 15 U.S.C. §§ 1635(f), 1640(e). The newest of the loans at issue (the 2007 HELOC) was granted well beyond the applicable limitations periods and is inactionable. Moreover, further assuming for purposes of this Motion to Dismiss that the 2007 loans constitute "consumer credit transaction[s]…secured by the consumer's principal dwelling" under HOEPA, which the Bank denies, Ms. Warrender's loans still do not fall within the ambit of HOEPA and Regulation Z and, hence, she cannot assert claims thereunder.

HOEPA provides that: "A creditor shall not engage in a pattern or practice of extending credit to consumers under mortgages referred to in section 1602(aa) of this title based on the consumers' collateral without regard to the consumers' repayment ability, including the consumers' current and expected income, current obligations, and employment." 15 U.S.C. § 1639(h). However, Section 1602(aa) limits the applicability of the statute to:

> a consumer credit transaction that is secured by the consumer's principal dwelling…if —
>
> (A) the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or
>
> (B) the total points and fees payable by the consumer at or before closing will exceed the greater of —
>
>   (i)   8 percent of the total loan amount; or
>
>   (ii)  $400.

15 U.S.C. 1602(aa)(1).

The applicable provisions of Regulation Z are similarly limiting. Section 226.34 (relating to repayment ability) expressly concerns "[p]rohibited acts or practices for loans subject to [Section] 226.32." 12 C.F.R. § 226.34(a). This latter section regarding certain closed-end home mortgages explicitly excludes any coverage of the loans at issue. It reads in relevant part:

(a) Coverage.

(1) Except as provided in paragraph (a)(2) of this section, the requirements of this section apply to a consumer credit transaction that is secured by the consumer's principal dwelling, and in which either:

(i) The annual percentage rate at consummation will exceed by more than 8 percentage points for first-lien loans, or by more than 10 percentage points for subordinate-lien loans, the yield on Treasury securities having comparable periods of maturity to the loan maturity as of the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or

(ii) The total points and fees payable by the consumer at or before loan closing will exceed the greater of 8 percent of the total loan amount, or $400….

12 C.F.R. 226.32(a). It is undisputed that, in this instance, the loans at issue do not come within the purview of Section 1602(aa) or 12 C.F.R. 226.32(a) — the applicable interest rate was 6.25%[6] and the points and fees were minimal ($5,479 per ¶ 31 of the Counterclaim or $547 per ¶ 54) when compared to the size of the loans.[7] Accordingly, HOEPA and the corresponding provisions of Regulation Z do not apply. Similarly, HOEPA does not apply to home equity lines of credit, like the HELOC in this case. See 15 USC Section 1602(aa).

Counts I and II of the Counterclaim should be dismissed as untimely and for failure to state a claim.

---

[6] Until voluntarily reduced by Sovereign Bank as an accommodation to Ms. Warrender in 2007 to a rate of 3.5%. Counterclaim, at ¶ 66.

[7] This is true even if one were to review the points and fees paid in connection with the initial 2005 Construction Loan. The Counterclaim alleges fees and points of $5,479 on a construction loan of $1.9 million. Id., ¶¶ 30-31.

## 2. The Claim under ECOA and Regulation B

In Count III of the Counterclaim, Warrender asserts that the Bank violated ECOA (15 U.S.C. §§ 1691, et seq.) and Regulation B (12 C.F.R. §§ 202.1, et seq.) thereunder, by not taking a "written application from Ms. Warrender in conjunction with the 2007 loan transactions." Counterclaim, ¶ 87. Once again Sovereign Bank disputes the correctness of this factual assertion, which is demonstrably false. Attached hereto as Exhibits 1 and 5 are written loan applications by Ms. Warrender (Exhibit 5 is the final, executed version of Exhibit 1). Ms. Warrender may dispute how the forms were completed and the accuracy of the information contained therein, but it is beyond peradventure that she did sign and submit a written application for the loans.[8]

Moreover, as with the HOEPA claims, the Court need not reach the underlying facts of Count III because the claim falls legally short of asserting a valid cause of action. Pursuant to Section 1691e, no action under ECOA "shall be brought later than two years from the date of the occurrence of the violation." 15 U.S.C. § 1691e(f). As the ECOA and Regulation B violations are claimed to have occurred in October of 2007 (at the latest), the statute of limitations long ago expired on those claims.[9] If this Court were to reach the underlying facts of Count III, it would find that ECOA is not applicable to the loans at issue as there are no allegations that the Bank discriminated against Warrender:

(1) on the basis of race, color, religion, national origin, sex or marital status, or age [ ];

(2) because all or part of [Warrender]'s income derives from any public assistance program; or

---

[8] Moreover, Ms. Warrender is not claiming she was discriminated against, but merely that she was not required to file a written application. If this were the case, no damages would flow from this alleged oversight, which does not relate to the reason for Congress's enactment of ECOA. 15 U.S.C. § 1691e(a), (f) (providing for recovery of "actual damages" and referring to civil actions brought by "any applicant who has been a victim of…discrimination….").

[9] Ms. Warrender in her Complaint also references TILA, although she does not make it a predicate to her asserted causes of action. Any claim under this statute would also be time barred. As with HOEPA, TILA has a one-year statute of limitations for a damages claim and a three-year statute of limitations for a rescission claim 15 U.S.C. §§ 1635(f), 1640 (e).

(3)    because [Warrender] has in good faith exercised any right under this chapter.

15 U.S.C. § 1691(a).

Count III of the Counterclaim should be dismissed, like Counts I and II, because it is time-barred and fails to state a claim for relief.

### C. The State Law Causes of Action Also Are Time-Barred and Fail to State Claims for Relief.

#### 1. The Allegations of Fraudulent Misrepresentation

In Count IV of the Counterclaim Ms. Warrender alleges that the Bank made fraudulent misrepresentations when it knowingly and intentionally (a) "misrepresented information on Ms. Warrender's application for the 2005 Construction Loan and the 2007 [Refinance] Loan" and (b) "misrepresented to Ms. Warrender that Sovereign Bank would enable Ms. Warrender to be able to keep the Property, and make payments on the mortgages." Counterclaim, ¶¶ 90, 92. Warrender alleges that these misrepresentations were made "in order to induce [her] into believing that she was qualified for the loans and to executed mortgage obligations that it knew she could not repay." Id., ¶ 91. Ms. Warrender claims to have relied on the misrepresentations regarding her qualification for the loans and further alleges she relied on a Bank employee's suggestion that a 2006 offer to purchase the Property "was too low." Id., ¶¶ 92, 94.

Based upon the allegations, it is evident that these claims are barred by the applicable statute of limitations. Under Massachusetts law, a claim sounding in tort may be commenced "only within three years next after the cause of action accrues." M.G.L. c. 260, § 2A. See e.g. Kent v. Dupree, 13 Mass. App. Ct. 44, 47, 429 N.E.2d 1041 (1982) (finding that fraudulent misrepresentation is an action sounding in tort and subject to the three-year statute of limitations). The general rule for tort actions is that an action accrues when the plaintiff is

injured. Koe v. Mercer, 450 Mass. 97, 101, 876 N.E.2d 831 (2007). Under the "discovery rule," however "certain causes of action based on inherently unknowable wrongs do not accrue until the plaintiff learns, or reasonably should have learned, that [she] has been harmed by the defendant's conduct." White v. Peabody Constr. Co., 386 Mass. 121, 129, 434 N.E.2d 1015 (1982). The discovery rule may apply to actions for fraud and misrepresentation. McEneaney v. Chestnut Hill Realty Corp., 38 Mass. App. Ct. 573, 577, 650 N.E.2d 93 (1995). A plaintiff seeking to rely on the discovery rule bears the burden of proving both the actual lack of knowledge and the objective reasonableness of that lack of knowledge during the tolling period. Koe, 450 Mass. at 101, 876 N.E.2d 831. In this case, Ms. Warrender's claims accrued (and the three-year statute of limitations began to run) when she knew or should have known of the complained-of behavior. Under this standard, and even under a reading of the Counterclaim most generous to Ms. Warrender, the claims are time-barred; Ms. Warrender alleges that the Bank made misrepresentations in 2006 and 2007 of which she was (or should have been) aware, but she did not file her Counterclaim until 2011. Therefore, Count IV must be dismissed as untimely.

On the merits, Ms. Warrender's fraud claim also fails. Ms. Warrender signed all of the loan applications for the loans at issue. In addition, disclosures provided at the time of the closings specified her repayment obligations. One is hard pressed to conclude that Ms. Warrender was unable to ascertain her repayment abilities prior to the loan closing, as she received a loan commitment letter in December of 2006 showing that her monthly payments on the contemplated 2007 Refinance Loan would be $13,812.50 per month. Exhibit 3. Similarly at the loan closing Ms. Warrender received Truth-in-Lending disclosures (although not required), which also set forth her monthly payment obligations. Exhibit 4. In fact, Ms. Warrender admits

that "immediately after executing the 2007 [Refinance] Loan, [she] emailed [the Bank officer] with her concerns about the size of the monthly mortgage payment." Counterclaim, ¶ 56.

To the extent Ms. Warrender claims she did not understand that her application reflected (what she now claims are) inflated misrepresentations as to her income, she signed the formal loan application on January 5, 2007 containing that income information. When she signed the application Ms. Warrender certified that:

> Each of the undersigned specifically represents to Leader…and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.

Exhibit 5. Given the information provided to her in writing and the documents she signed, it is preposterous for Ms. Warrender to now claim that she did not know how her income was reflected in the loan application or that she somehow did not understand the size of the monthly payments under her loans at the time the loans were extended.

The allegations relating to assurances that the Bank would work with Ms. Warrender to keep the payments current sound more in the nature of a vague assurance, not actionable conduct. "Highly generalized expressions of good will such as, 'We'll work with you,' and 'We don't want to own your house,' do not cause a borrower of ordinary perspicacity, who signs highly specific loan documents, reasonably to believe that the documents are without meaning." Hogan v. Riemer, 35 Mass. App. Ct. 360, 367, 619 N.E.2d 984 (1993). Warrender's claim of fraud must fail as it is untimely and fails to state a claim for relief.

## 2. The Alleged Violations of M.G.L. c. 93A

In Count V of the Counterclaim Ms. Warrender asserts violations of Section 11 of the Massachusetts Consumer Protection Act (M.G.L. c. 93A §11).[10] To the extent her claims are derivative of and premised on claimed violations of HOEPA, they fail because HOEPA is inapplicable to the transactions at issue. Counterclaim, ¶¶ 99-100; supra, at pp. 6-8. Where a party's claim under Chapter 93A is wholly derivative of another claim that is subject to dismissal as inapplicable to the facts, the Chapter 93A claim must be dismissed as well. Pembroke Country Club, Inc. v. Regency Savings Bank, F.S.B., 62 Mass. App. Ct. 34, 40-41, 815 N.E.2d 241 (2004). Moreover to the extent Count V is based on the dealings between the parties in connection with the extension of the 2005 Construction Loan or the 2007 Refinance Loan, the claims are barred by the four-year statute of limitations applicable to claims under Chapter 93A. Counterclaim, ¶ 101; M.G.L. c. 260, § 5A.

Finally, as a practical matter, Ms. Warrender continually refers to a scheme by the Bank to "strip equity out of the property and then take it from her." However the Bank's actions as set forth in the Counterclaim contradict such an intent. If the Bank had intended to foreclose to deprive Ms. Warrender of her property and the equity therein, they would not have voluntarily agreed to reduce the interest rate on the loans from 6.25% to 3.5% for two years and agreed to accept interest-only payments during this time frame. Counterclaim, ¶ 66. Such accommodations in the interest rates and the terms of repayment are hardly the actions of a "bloodthirsty" bank. The Bank also did not jump to foreclose at the first indication of payment difficulty in 2005 or 2006 when Warrender claims to have possessed over $1 million in equity. Counterclaim, ¶¶ 29, 36. Count V is appropriately dismissed.

---

[10] In pressing a claim under Section 11 of the statute, Ms. Warrender is conceding that the property at issue was not her primary residence and that this was not a consumer loan, but rather was an investment property. Compare M.G.L. c. 93A, §§ 9 and 11.

### 3. The Claim for Declaratory Judgment

Count VI of the Counterclaim is a claim for declaratory judgment. It is entirely derivative of the claims under HOEPA and Chapter 93A. To the extent those claims fail, then by necessity the claim for declaratory judgment fails. Further, there is no support for Warrender's claim that the Bank would be unjustly enriched by foreclosure.

### IV. CONCLUSION

The Counterclaims asserted under federal banking laws are time-barred and do not apply to Warrender's loans. Similarly the state-law based Counterclaims are time-barred and fall short of stating claims for relief. As a result, the Counterclaims asserted against the Bank should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).[11]

Dated: April 19, 2012

        Plaintiff/Defendant-in-Counterclaim,
        SOVEREIGN BANK, N.A.,
        By its attorneys,

        /s/ Sarah A. Smegal
        Richard E. Gentilli, BBO # 189080
        Howard M. Brown, BBO # 547948
        Sarah A. Smegal, BBO # 655114
        Bartlett Hackett Feinberg P.C.
        155 Federal Street, 9th Floor
        Boston, MA 02110
        Tel: (617) 422-0200
        Fax: (617) 422-0383
        reg@bostonbusinesslaw.com
        hmb@bostonbusinesslaw.com
        sas@bostonbusinesslaw.com

---

[11] Even if the Court were to find that Warrender's Counterclaims state claims for relief, but are time-barred, any remaining rights of Ms. Warrender to raise such claims by way of recoupment (i.e., as a set off) would not support their survival as counterclaims seeking affirmative relief. Rather, the claims would only be available to Ms. Warrender as an affirmative defense of set off.